# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **E.H., BY AND THROUGH HER NEXT FRIEND, ALTHEA ABRON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10613** |
| **ARTHUR BARRILLEAUX, ET AL.** | **SECTION D (3)** |

## ORDER

Before the Court are Motions for Summary Judgment filed by Defendants Arthur Barrilleaux and Brett Chatelain.[1]  Plaintiff E.H. has filed an Opposition to each Motion,[2] and Defendants filed a consolidated Reply.[3]  After careful review of the parties' memoranda, the record, and the applicable law, the Court grants both Motions.

## I.    FACTUAL BACKGROUND

E.H. was a fourteen-year old student in eighth grade at Ponchatoula High School.[4]  On March 28, 2019, after E.H. had finished her lunch and was cleaning her tray, D.S. allegedly threw food at E.H.'s head.[5]  After lunch, E.H. identified the student she believed to have thrown food at her, and confronted the student in the school's courtyard.[6]  A fight, parts of which were recorded, ensued.[7]  The video shows

---

[1] R. Doc. 73 (Barrilleaux); R. Doc. 74 (Chatelain).
[2] R. Doc. 82 (Chatelain); R. Doc. 83 (Barrilleaux).
[3] R. Doc. 87.
[4] R. Doc. 54 at 1 ¶ 2.
[5] R. Doc. 54 at 4-5 ¶ 16.
[6] R. Doc. 54 at 5 ¶ 19.
[7] *See* R. Doc. 73-2 (manual attachment, video of fight).

E.H. and D.S. in a physical altercation.  D.S. has a grip on E.H.'s hair, while E.H. has a grip on D.S.'s shirt.  The video shows the students spin around the courtyard while holding on to each other, and each girl uses fists to strike the other on the head multiple times.  In the final two seconds of the video, Nathan Kelly, a teacher at the school, and a female administrator approach to begin to break up the fight.

Kelly testified that he was the first one on the scene who attempted to break the girls up.[8]  Kelly further testified that he separated the girls, and began to move one girl (D.S.) into the discipline office.  Kelly stated that as he was walking D.S. away, he heard a "furious" E.H. "making a commotion."[9]  Kelly also testified that E.H. attempted to attack D.S. after Kelly had D.S. restrained and was walking away.[10]  E.H. was prevented from re-engaging with D.S. because Defendant Chatelain "grabbed her."[11]

At approximately 12:35 p.m., Arthur Barrilleaux (a disciplinarian and English teacher at the school) was called into the courtyard for the purpose of deescalating the fight between the students.[12]  At approximately the same time, Brett Chatelain (a physical education teacher at the school) was also called into the courtyard for the

---

[8] R. Doc. 83-3 at 16 ("Q. Okay. When you got involved in the fight, were there any other teachers at the moment when you became involved who were trying to also break up the fight?  A. I was the first one.").

[9] R. Doc. 87-1 at 4-5.

[10] *Id.* at 4-5 ("When I had my body turned, and somehow, as I was moving away, I could see out of the corner of my eye that she was coming that way again."); *see also id.* at 5 ("Q. And then as you guys were headed toward the cottage, the other student who was fighting started to try to re-engage; is that a fair statement?  A. Yes.").

[11] *Id.* at 5 ("Q. Now, how did she get prevented from being reengaged; who stopped her, or how did— A. Brett, he grabbed her.").

[12] R. Doc. 73-5 at 2 ¶ 4 (Affidavit of Arthur Barrilleaux stating "On March 28, 2019, at approximately 12:35 p.m., he was called into the Ponchatoula Junior High School's courtyard outside the cafeteria for purposes of assisting in deescalating a fight between two students, E.H. and D.S.").

purpose of assisting with deescalating the fight between the students.[13]  There is no video in evidence demonstrating what took place between the students' fight and the second video, which shows some of the actions of Defendants' at issue purportedly moments later.  Chatelain testified that the students were still swinging at each other when Chatelain walked up, but that Mr. Kelly had already grabbed D.S.[14]  Chatelain grabbed E.H. around the waist, and then they fell to the ground.[15]  Chatelain testified that he then restrained E.H.[16]  Barrilleaux walked into the courtyard as the students were being separated and Chatelain and E.H. fell to the ground.[17]  Barrilleaux testified:  "She was fighting Coach Chatelain.  Well, she wasn't fighting, throwing punches.  She was struggling to get free from Chatelain, and he was having to restrain her from getting up."[18]  Barrilleaux testified that E.H. was "trying to get up, and [Chatelain] was restraining her and trying to calm her down."[19]  He further

---

[13] R. Doc. 74-5 at 2 ¶ 4 (Affidavit of Brett Chatelain stating "On March 28, 2019, at approximately 12:35 p.m., he was called into the Ponchatoula Junior High School's courtyard outside the cafeteria for purposes of assisting in deescalating a fight between two students, E.H. and D.S.").

[14] R. Doc. 82-4 at 75 ("Q. Were they swinging at each other when you were walking up? A. Yes, yes."); *see id.* at 74 ("Q. Why did you immediately grab E.H.? A. Because Mr. Kelly had the other one, D.S.").

[15] R. Doc. 82-4 at 75 ("Q. You don't think so. Okay. All right.  You grabbed E.H. by the waist. Then what happened?  A. Then somehow I don't know if D.S. just let go of her hair or her came out – I don't remember – but at some point the tension was broken and that's when we fell to the ground.").  Plaintiff argues that the fight was "over" at this point, whereas Defendant contends E.H. continued to try to re-engage with D.S.  At bottom, this is a semantic difference, as the undisputed evidence in the record establishes that the girls were separated when Chatelain and E.H. fell to the ground, but that E.H. continued to struggle with Chatelain, and the disruption of the schoolyard continued.

[16] R. Doc. 82-4 at 76 (Q. Okay, So y'all fell forward.  When y'all hit the ground, then what happened?  A.  I got up, E.H. was still on the ground, and that's when I grabbed her hands and restrained her on the ground.").

[17] R. Doc. 83-4 at 41 ("Q. So when you left the pack room and went outside to the courtyard, was the fight between E.H. and the other young lady still going on?  A. No. As I walked out, Coach Chatelain was already there, Mr. Kelly was there and a few students, and they were – she had separated from the girl, and that's when they – when I came out, I saw them separate and fall to the ground.").

[18] R. Doc. 83-4 at 43.

[19] R. Doc. 83-4 at 42.

testified that E.H. was using her feet and "struggling to get free from Chatelain."[20] Chatelain testified that E.H. continued to struggle.[21]  Barrilleaux testified that he grabbed E.H's feet.[22]

What happened next was also partially captured on camera.[23]  In the second video Brett Chatelain can be seen restraining E.H.'s hands while she is on the concrete ground.  He moves in and plants his knee on her torso.[24]  Barrilleaux (green shirt) comes up and restrains E.H.'s legs.  Barrilleaux drags E.H. a slight distance on the ground.  Barrilleaux states:  "Be still or I am gonna thump your ass."  E.H. continues to kick.[25]  Barrilleaux continues: "I'll do whatever I want to your ass if you act stupid."  E.H. can be heard yelling "let me up."[26]  Either Barrilleaux or Chatelain responds:  "calm down and I'll let you up."[27]  Chatelain positions his hands near E.H.'s shoulders.  Barrilleaux says "I'll take your ass to jail."[28]  Chatelain testified that he did not place his weight on E.H., although he did have his knee near her midsection.[29] Plaintiff also contends, without a citation to record evidence, that she was later

---

[20] *Id.* at 43.

[21] R. Doc. 83-5 at 76 ("Q. And then what happened?  A.  She said 'On my mama, I'm going to kill that bitch.  Get the fuck off of me.  Let me fucking go.'  And that's when I told her if she calmed down, I would let her up.").

[22] R. Doc. 83-4 at 43 ("You know, she was king of picking them up and putting them down.  So I felt that if I grabbed her feet and kept if off of the ground, then she couldn't have as much power to resist.").

[23] R. Doc. 73-2 (manual attachment).

[24] R. Doc. 73-2, Video 2 at 0:05.

[25] R. Doc. 73-2, Video 2 at 0:17.

[26] R. Doc. 73-2, Video 2 at 0:23.

[27] R. Doc. 73-2, Video 2 at 0:28-29.

[28] R. Doc. 73-2, Video 2 at 0:32-24.

[29] R. Doc. 74-6 at 10 ("I had – one knee was at a 45-degree angle, and my other knee was – I don't know what you call the position, but I didn't have my full weight on it because my foot was cocked in a certain way, because I did not want to put my full weight on a little girl and hurt her in any kind of way.").

restrained on a table, where she allegedly hit her head multiple times.[30]   Chatelain disputed this in his deposition, in which he stated that he and Barrilleaux held her arms and only leaned her up against the picnic table, making no effort to harm her head.[31]

E.H. was later diagnosed with a concussion.[32]   She was also diagnosed with PTSD, as well as anxiety and depression related to the incident.[33]

Defendants rely on two experts who state that their actions were reasonable.[34] Bruce Chapman, an expert who implemented the Handle with Care Program for the Tangipahoa Parish School System, states that "Defendants Brett Chatelain and Arthur R. Barrilleaux used the minimal amount of force necessary in their efforts to restrain the Plaintiff, E.H.  Both Defendants acted in accordance with a 'Reasonable Person' standard during the incident."[35]   Notably, Chapman also includes an analysis of the videos.  He states that "Barrilleaux was very loud, confrontational, and inartful in his vocalizations and language."[36]   However, he concludes:  "[d]espite the harsh

---

[30] *See* R. Doc. 82 at 3 ("Not captured on video was when E.H. could stand, at which point she was restrained again by Defendant Chatelain on a table.  While being restrained on the table, E.H. hit her head on the table multiple times.").  Plaintiff admitted at oral argument that there was no evidence to support this allegation in the record.

[31] R. Doc. 74-6 at 12 ("Q. Now, when you had to restrain her and keep her near the picnic table, what exactly did you do, to the best of your recollection?  A. I held her – I had one arm, and Coach Barrilleaux had the other arm.  Q.  Did you put her on top of the picnic table?  A.  No.  I just leaned her up against it.  Q.  You just leaned her up against it.  A.  Uh-huh (affirmative response).  Q. Did you ever make any effort to harm this child's head?  A. No, sir.  Q.  Did you ever see Rusty try to harm the child's head?  A.  Absolutely not.").

[32] R. Doc. 83-6 at 2.

[33] *See* R. Doc. 83-7; R. Doc. 83-8.

[34] Although the Court includes a description of these expert opinions as background because they are discussed by Defendants, the Court does not rely on these expert opinions in reach the legal conclusions in this Order.

[35] R. Doc. 74-3 at 2 (Affidavit of Bruce Chapman).

[36] R. Doc. 74-3 at 5.

vocalizations, from a physical standpoint, both Defendants behaved reasonably in their efforts to contain [E.H.] and were consistent in the minimal amount of force used throughout."[37]   Defendants also rely on Captain Kenneth Sanders, a national expert in police procedure and use of force.  He stated:  "my opinion is that any force of technique used by Mr. Chatelain or Mr. Barrilleaux was not excessive or unreasonable."[38]

Barrilleaux and Chatelain were both terminated.  Both filed lawsuits in state court challenging their termination.  Barrilleaux won his suit, and the state court ordered that he be reinstated with back pay.[39]  The Court found that Barrilleaux did not use excessive force or violate school policies.[40]  After the ruling in Barrilleaux's case, the Tangipahoa Parish School Board agreed to reinstate Chatelain.[41]

Plaintiff's First Amended Complaint[42] alleges four claims against Barrilleaux and Chatelain.  First, E.H. alleges violations of her Constitutional rights under the Fourteenth Amended via 42 U.S.C. § 1983.  This is E.H.'s only claim arising under federal law.   Plaintiff's remaining claims for Intentional Infliction of Emotional

---

[37] *Id.*
[38] R. Doc. 74-4 at 1-2 ¶ 3(a).
[39] R. Doc. 73-9.
[40] *Id.* at 9 ("Based upon the credibility of the witnesses who testified at the hearing, the exhibits introduced and all the pleadings, the Court finds that not only did Mr. Barrilleaux not use excessive force during his intervention when assisting Mr. Chatelain, but that he did not make repeated threats nor make inappropriate comments under the circumstances of this situation.  Further, the Court finds that Mr. Barrilleaux did not violate the Tangipahoa Parish School System Employee Conduct Policy, GBRA, or any other policy of the Board that was introduced into evidence.").
[41] R. Doc. 74-1 at 3-4.  Although Chatelain provides no evidence to this effect, this fact does not appear to be disputed.
[42] R. Doc. 54.

Distress ("IIED"), assault and battery, and physical abuse of a minor each arise under Louisiana law.

Defendants move for summary judgment.[43]  In their Motions, Defendants first argue that Plaintiff's Section 1983 claim should be dismissed.  They argue that in the context of corporal punishment in schools, a plaintiff can have a claim arising under the Constitution only when the act is "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."  They further argue that the Fifth Circuit does not allow a public school student to bring a Section 1983 claim where the state provides an adequate remedy.  Defendants point to two Fifth Circuit cases—*Flores v. School Board of DeSoto Parish*[44] and *Marquez v. Garnett*.[45]  Defendants contend that the actions taken to punish the students in *Flores* and *Marquez* were more extreme than those here, yet in both of those cases the Fifth Circuit rejected the plaintiff's Section 1983 claim. Defendants also contend that Plaintiffs state law claims are barred by Louisiana statute because both Defendants are entitled to qualified immunity under state law and because their actions constituted reasonable corporal punishment, which Louisiana law allows.

In her Oppositions,[46] Plaintiff argues that the fight between E.H. and D.S. had already been broken up, and therefore Defendants' actions cannot be said to serve a pedagogical objective.  As to the Section 1983 claim, Plaintiff argues that schoolchildren have a liberty interest under the Fourteenth Amended in their "bodily

---

[43] R. Doc. 73 (Barrilleaux); R. Doc. 74 (Chatelain).
[44] 116 F. App'x 504 (5th Cir. 2004).
[45] 567 F. App'x 214 (5th Cir. 2014).
[46] R. Doc. 82 (Chatelain); R. Doc. 83 (Barrilleaux).

integrity" which was violated by Defendants. Plaintiff states (in somewhat conclusory fashion) that "[c]ommon sense demonstrates that a triable issue exists considering the circumstances as to whether Defendant Barrilleaux's actions and amount of force used were or were not 'objectively reasonable' considering the age and size of E.H., as well as the fact that the altercation was over by the time he arrived." Plaintiff also contends that *Flores* and *Marquez* are not precedent because they are not published cases.

Plaintiff argues that Defendants' actions are not corporal punishment as defined by Louisiana law. Plaintiff cites to La. R.S. 17:416.1(B)(1), which defines corporal punishment as "using physical force to discipline a student, with or without an object." Plaintiff contends that because Defendants did not act to *punish* E.H., they cannot argue that their actions were corporal punishment. Rather, Plaintiff argues that Defendants' actions should be characterized as physical restraint, and that Defendants did not properly exercise physical restraint.

Plaintiff also takes issue with Defendants reliance of the expert opinions of Bruce Chapman and Captain Sanders. Although Plaintiff has not moved to exclude either expert, Plaintiff argues that Sanders's opinion is based on inaccurate information and that he cannot assist the trier of fact because his experience is with penal facilities. Plaintiff also argues that Chapman provided a "complete mischaracterization" of the evidence and that he failed to properly investigate before issuing his opinion.

In their Reply,[47] Defendants argue that should the Court dismiss the federal Section 1983 claim, the Court lacks jurisdiction over the pendant state claims and therefore those claims should be dismissed.  Defendants also emphasize that E.H. continued to try to re-engage with D.S., and so the fight was *not* over at the time Defendants arrived at the scene.  Defendants further argue that this case is on all fours with *Thomas v. City of New Orleans*,[48] where Judge Feldman similarly dismissed a Section 1983 claim based in corporal punishment.

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[49]  When assessing whether a dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[50]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[51]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[52]

---

[47] R. Doc. 87.

[48] 883 F. Supp. 2d 669 (E.D. La. 2012).

[49] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[50] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[51] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[52] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[53]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[54]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[55]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[56]

## III.   ANALYSIS

### A.   Plaintiff's Section 1983 Claim

Plaintiff's first claim, and only federal claim, is a claim under 28 U.S.C. § 1983. "To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the

---

[53] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

[54] *Id.* at 1265.

[55] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[56] *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (*quoting* Fed. R. Civ. P. 56(e)).

alleged deprivation was committed by person acting under color of state law."[57]  The second factor is not disputed.  The Fifth Circuit has recognized that "the right to be free from bodily restraint" is a constitutional right.[58]  It is this right, which is routinely discussed in cases in which a student is allegedly hurt or mistreated by a school employee, that Plaintiff asserts was violated.[59]  Relatedly, in the context of corporal punishment, the Fifth Circuit has at times stated that corporal punishment "is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."[60]

Defendants assert a qualified immunity defense.  To resolve a government official's qualified immunity defense, courts apply the two-prong test required by the Supreme Court in *Saucier v. Katz.*[61]  Under the first prong, "[t]he Court must determine whether the plaintiffs have shown a violation of a constitutional right."[62] Under the second prong, the Court must consider "whether the right at issue was 'clearly established' at the time of the defendant's conduct."[63]  "The qualified immunity defense is appropriate resolved at the summary judgment stage when (1) a plaintiff has established that the defendant has engaged in the complained-of

[57] *Leffall v. Dallas Ind. School Dist.*, 28 F.3d 521, 525 (5th Cir. 1994).

[58] *Jefferson v. Ysleta Ind. School Dist.*, 817 F.2d 303, 305 (5th Cir. 1987). Defendants conceded during oral argument that students have a right to be free from bodily restraint.

[59] *Jefferson*, 817 F.2d at 305; *Flores v. School Bd. of DeSoto Parish*, 116 F. App'x 504, 509 (5th Cir. 2004).

[60] *Woodard v. Los Fresnos Ind. School Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984).

[61] 533 U.S. 194, 121 (2001); *see also Thomas v. City of New Orleans*, 883 F. Supp. 2d, 669, 682 (E.D. La. 2012).

[62] *Thomas*, 883 F. Supp. 2d at 682.

[63] *Id. (quoting Pearson v. Callahan*, 555 U.S. 223 (2009)).

conduct or (2) the court 'skip[s], for the moment, over . . . still contested matters to consider an issue that would moot their effect if proved."[64]

When a Section 1983 claim arises from the treatment of a public school student and a qualified immunity defense is raised, courts sometimes analyze the question of whether to dismiss a Section 1983 claim under the first prong of whether a Plaintiff asserts a viable 1983 claim, and some courts analyze the same question under the first prong of a qualified immunity defense.[65]  Regardless of the approach, the narrow question presented by Defendants' Motions is the same:  Do the facts, viewed in the light most favorable to Plaintiff, demonstrate a violation of a Constitutional right?

Here, Plaintiff does not state a constitutional claim, and Defendants are entitled to qualified immunity.  In *Fee v. Herndon*, the Fifth Circuit explicitly held: "[o]ur precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post-punishment civil or criminal remedies for the student to vindicate legal transgressions."[66]  "The rationale for this rule, quite simply, is that such states have provided all the process constitutionally due."[67]  "That is to say, the Constitution is not a criminal or civil code to be invoked invariably for crimes or torts of state educators who act in contravention

---

[64] *Hatcher v. Bement*, 2015 WL 1511106, at *7 (N.D. Tex. Apr. 3, 2015) (quoting *Fleming v. Tunica*, 497 F. App'x 381, 388 (5th Cir. 2012).

[65] *Compare Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990) (discussing whether Plaintiff has a Section 1983 claim without considering a qualified immunity defense), *Woodard v. Los Fresnos Indep. Sch. Dist.*, 732 F.2d 1243 (5th Cir. 1984) (same) *with Marquez v. Garnett*, 568 F. App'x 214 (5th Cir. 2014) (discussing the issue in terms of a qualified immunity defense), *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669 (E.D. La. 2012) (same).

[66] *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990).

[67] *Id.*

of the very laws designed to thwart abusive disciplinarians."[68]  In short, if Louisiana state law offers Plaintiff a remedy, then there is no constitutional claim.[69]

Louisiana state law does offer Plaintiff a remedy, as demonstrated by Plaintiff's numerous state causes of action.  Plaintiff has filed state law claims alleging Intentional Infliction of Emotional Distress, assault and battery, and physical abuse of a minor.  Moreover, the Fifth Circuit has explicitly held that "the State of Louisiana affords students an adequate remedy through its tort law and statutory provisions in Title 17."[70]  This holding is dispositive and requires dismissal of Plaintiff's Section 1983 claim.  An examination of Louisiana law confirms that this is accurate.  Title 17 does allow for *reasonable* corporal punishment, but limits it.  La. R.S. 17:416.1 states: "teachers, principals, and administrators of the public schools may . . . employ *other reasonable disciplinary and corrective measures* to maintain order in the schools."[71]  Further, Louisiana law clearly allows a student to sue such teachers individually where their acts were "malicious and willfully and deliberately intended to cause bodily harm."[72]

Plaintiff resists this conclusion by arguing that Defendants' actions do not constitute "corporal punishment" and therefore the Fifth Circuit's rule limiting constitutional claims as clarified in *Fee v. Herndon* does not apply.  Plaintiff

---

[68] *Id.*

[69] This is true whether or not Defendants are immune from suit under state law.  *Moore v. Willis Ind. School Dist.*, 233 F.3d 871, 878 (Weimer, J., concurring).

[70] *Flores v. School Bd. of DeSoto Parish*, 116 F. App'x 504, 509 (5th Cir. 2004); *see also Coleman v. Franklin Parish School Bd.*, 702 F.2d 74, 76 (5th Cir. 1983) (Analyzing Title 17 and holding that it limits the use of corporal punishment).

[71] La. R.S. 17:416.1(A).

[72] La. R.S. 17:416.11(A).

specifically points to Louisiana statutes (rather than federal law) to argue that Defendants' actions were not corporal punishment.   Louisiana Revised Statute 17:416.1(B)(1)(a) defines corporal punishment as:  "using physical force to discipline a student, with or without an object.  Corporal punishment include hitting, paddling, striking, spanking, slapping or any other physical force."[73]  The definition specifically excludes "[t]he use of reasonable and necessary physical restraint of a student to protect the student, or others, from bodily harm or to obtain possession of a weapon or other dangerous object from a student."[74]   Therefore, under Louisiana law, Defendants' action may more properly be considered "physical restraint" than "corporal punishment."

It is not Louisiana's statutory definition of "corporal punishment" that controls an analysis of a Section 1983 claim.  Federal courts do not look to state definitions of corporal punishment when determining whether an action constitutes corporal punishment for the purpose for a Section 1983 claim.[75]  Rather, they look to how other federal courts and the United States Supreme Court have defined it.  "The Supreme Court has described corporal punishment as the force that a teacher 'reasonably believes to be necessary for a child's proper *control*, training, or education.'"[76]  Other courts have broadly defined corporal punishment as force that is an attempt to serve

---

[73] La. R.S. 17:416.1(B)(1)(a).

[74] *Id.* at 17:416(B)(1)(b)(i).

[75] Plaintiff cites to no case where a federal court relied on the state-law definition of corporal punishment in considering a Section 1983 claim, and at oral argument Plaintiff's counsel could not identify one.

[76] *Flores* at 511 (citing *Ingraham v. Wright,* 430 U.S. 651, 661 (1997)) (emphasis added).

a pedagogical objective.[77]  The Fifth Circuit, in a case involving Louisiana law, has stated:  "At bottom, fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose."[78]

Defendants' actions plainly fit within any of these definitions of corporal punishment.  Barrilleaux and Chatelain had a "legitimate pedagogical purpose" in (1) stopping the fight, and (2) maintaining control of E.H., who was continuing to struggle in the immediate aftermath of the fight with D.S.  For the same reasons, Defendants' actions were not "unrelated to any legitimate state goal,"[79] nor were they "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conductive to learning."[80]

Indeed, in other cases, courts have found actions far more severe than the facts of this case to be "corporal punishment," but which did not give rise to a Section 1983 claim.  For example, in *Flores*, in response to a student questioning a coach's order, a coach "threw him against the wall, placed his hands around [the student's] neck and

---

[77] *See, e.g., Gottlieb v. Laurel Highland School Dist.*, 272 F.3d 168, 173-74 (3rd Cir. 2001) (holding that "[i]nformal physical confrontations have also been considered corporal punishment" and suggesting the test is whether there was a "pedagogical objective."); *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000) (finding that a coach hitting a student with metal weight lock and blinding him was corporal punishment, and that corporal punishment cases "may involve less traditional, more informally-administered, and more severe punishments"); *London v. Directors of DeWitt Public Schools*, 194 F.3d 873 (8th Cir. 1999) (a teacher dragging a student across the floor and banging his head against a metal pole after student refused to leave cafeteria is corporal punishment).

[78] *Flores v. School Bd. of DeSoto Parish*, 116 F. App'x 504, 510-11 (5th Cir. 2004).

[79] *Moore v. Willis Ind. School Dist.*, 233 F.3d 871, 875 (5th Cir. 2000).

[80] *Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990) (citing *Woodard v. Los Fresnos Ind. School Dist.*, 732 F.2d 1243, 1246 (5th Cir.1984)).

began to choke him while threatening further bodily harm."[81]   The Fifth Circuit defined this as corporal punishment because the defendant's acts "apparently were meant to punish [the plaintiff] and did not constitute a random, malicious, and unprovoked attack."[82]   Similarly here, Defendants' actions were not a "random, malicious, and unprovoked attack."[83]   In *Marquez v. Garnett*,[84] a seven-year-old physically disabled autistic student picked up a CD belonging to a teacher when the teacher was out of the room.   In response, the teacher, "cursed and yelled at [him], grabbed him from behind in a forceful and frightening manner, shoved him to the side and repeatedly kicked [him]."[85]   The Fifth Circuit held that because the setting was pedagogical and the plaintiff's actions were unwarranted "[t]he inference must be that Garnett acted to discipline [plaintiff], even if she may have overreacted."[86] Applying the same logic here, because the setting was undeniably pedagogical (given that it occurred at a school during the school day), and because E.H.'s actions in the fight were unwarranted, "[t]he inference must be that [Defendants] acted to discipline [E.H.], even if [they] may have overreacted."[87]

---

[81] *Flores* at 506.

[82] *Id.* at 511.

[83] *Id.*

[84] 567 F. App'x 214 (5th Cir. 2014).

[85] *Id.* at 215.

[86] *Id.* at 217.   Plaintiff argues that *Flores* and *Marquez* cannot be relied upon because they are unpublished opinions.   Fifth Circuit Rule 47.5.4 provides that unpublished opinions after January 1, 1996 are not binding precedent.   However, that rule also notes that such a case may be cited as pursuant to Federal Rule of Appellate Procedure 32.1(a), which states that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, and judgments, or other written dispositions" that have been designated "unpublished."   Such cases may not be binding, but they are persuasive. *See, e.g., Gonzalez v. U.S. Bank Nat. Ass'n ex rel GMAC Mortg. L.L.C.*, 584 F. App'x 118, 119-120 (5th Cir. 2013) (citing unpublished cases as "unpublished but persuasive"); *Knight v. Kirby Offshore Marine Pacific, L.L.C.*, 2020 WL 7393534 (5th Cir. Dec. 17, 2020) ("Of course, because Pallis and Ledet are unpublished, they are not precedential; but, their reasoning can be persuasive authority.").

[87] *Id.*

Plaintiff counters that even under the broader federal definition of corporal punishment, Defendants' actions still do not constitute corporal punishment because they were not intended to "punish" E.H.  Plaintiff argues that because the intent of Defendants was to control, rather than to punish, E.H., their actions cannot be considered corporal punishment.  It is true that some of the federal caselaw has emphasized that corporal punishment applies where there is an intent to punish the student.[88]  But the cases discussed above speak more broadly of "pedagogical objectives" (of which control is one).[89]  These cases are better understood as standing for the proposition that "corporal punishment" can be any actions that serve a pedagogical purpose (including control), and that the most common pedagogical purpose that appears in these cases is discipline.  In other words, even if Defendants' actions were not taken strictly with the intention to discipline E.H., Plaintiff still cannot maintain a Section 1983 claim because Defendants' actions, as evidenced in the record the Court, were not "arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."[90]

---

[88] *See Flores* at 511 (Wysinger's acts apparently were meant to punish [Plaintiff]); *Marquez* at 218 ("The inference must be that Garnett acted to discipline C.M., even if she overreacted."); *Moore v. Willis Ind. School Dist.*, 233 F.3d 871, 875 (5th Cir. 2000) ("This right is not implicated, however, when, as in this case, the conduct complained of is corporal punishment—even unreasonably excessive corporal punishment—intended as a disciplinary measure.").

[89] *See Fee v. Herndon*, 900 F.2d 804, 808 (5th Cir. 1990) ("We have stated that corporal punishment in public schools 'is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning.") (quoting *Woodward v. Los Fresnos Ind. School Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1984); *Flores* at 511 ("At bottom, fairly characterizing an act as corporal punishment depends on whether the school official intended to discipline the student for the purpose of maintaining order and respect or to cause harm to the student for no legitimate pedagogical purpose."); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871 (5th Cir. 2000) (suggesting the test is whether the action is "related to any legitimate state goal.").

[90] *Woodard v. Los Fresnos, Ind. School Dist.*, 732 F.2d 1243, 1246 (5th Cir. 1986).

In pressing the argument that Defendants' actions should not be viewed as "corporal punishment" Plaintiff relies heavily on *Jefferson v. Ysleta Independent School District*.[91]  In that case, a teacher tied a student to a chair for two days, and the student was not let up (even to go to the bathroom) other than for lunch. Importantly, this "was not for punishment but was part of an instructional technique imposed by school policy."[92]  The student brought a Section 1983 claim, and the district court denied a motion to dismiss.  On appeal, the Fifth Circuit affirmed, finding that a competent teacher would know that tying a student to a chair for two days "with no suggested justification, such as punishment or discipline, was constitutionally impermissible."[93]  The Fifth Circuit also stated that "[t]he petition asserts that [the student] was not being punished, but was the subject of an instructional technique.  As such, the holding of *Ingraham v. Wright* [the Supreme Court ruling on corporal punishment that dealt with procedural due process] and its progeny are inapplicable."[94]

*Jefferson*, however, is distinguishable.  In that case, there was no clear pedagogical objective to tying up a student for two days; here, Defendants were attempting to restrain Plaintiff in the immediate aftermath of a physical altercation that she started, and in a setting with dozens of other students.  Moreover, *Jefferson* predates *Herndon*, and its holding that if state-law remedies exist for what would otherwise be a substantive constitutional violation, a plaintiff does not have a federal

---

[91] 817 F.2d 303 (5th Cir. 1987).
[92] *Id.* at 305.
[93] *Id.*
[94] *Id.*

claim.  Again, Plaintiff contends that the facts support state law remedies and has brought such state law claims in this matter. Indeed, in *Thomas v. City of New Orleans*,[95] another division of this Court distinguished *Jefferson* on facts not dissimilar to the ones at issue here.  In that case, in response to an unspecified behavioral issue, a boy with special needs was locked in a closet and when he ran away, he was struck with a fly swatter, held down on the ground, and, ultimately, handcuffed by responding police officers.  As here, at least part of what took place could be characterized as "restraining" the student rather than corporal punishment. The court dismissed the Section 1983 claim, and distinguished *Jefferson* by noting that that that case came in a "materially different context" because the child was tied to a chair for two days for no apparent reason.

The Court in no way endorses the actions of Barrilleaux or Chatelain, nor does it make any judgment as to the merits of Plaintiff's state-law claims.  Such a finding would be inappropriate at this stage.  Rather, this Order holds only that because Plaintiff has a remedy or remedies at state law, Fifth Circuit precedent mandates the dismissal of Plaintiff's federal Section 1983 claim.

### B.    Supplemental Jurisdiction

Plaintiff's remaining claims are all pendant state-law claims.  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."[96]  A district court "enjoys wide discretion in determining whether to retain jurisdiction

---

[95] 883 F. Supp. 2d, 669 (E.D. La. 2012).
[96] 28 U.S.C. § 1367(c)(3).

over the remaining state law claims."[97]  "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute; no single factor is dispositive, and [the Fifth Circuit] must review the district court's decision in light of the specific circumstances of the case at bar."[98]

At oral argument, the parties' each agreed that should the Court dismiss Plaintiff's Section 1983 claim, the Court lacked jurisdiction over the remaining state-law claims.  Courts routinely decline to exercise supplemental jurisdiction over state-law claims after dismissing a federal claim in similar cases involving corporal punishment.[99]  Further, the remaining claims involve complex issues of state law, including the determination of whether Barrilleaux and Chatelain are entitled to qualified immunity under a Louisiana state statute.   Declining supplemental jurisdiction is appropriate where, as here, a state court is better positioned to determine the application of its own state statute, particularly in an area of complex state law.[100]

---

[97] *Burns-Toole v. Byrne*, 11 F.3d 1270, 1276 (5th Cir. 1994).

[98] *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595 (5th Cir. 2009).

[99] *See, e.g., Croson v. Bush*, No. 04-837, 2006 WL 8456278, at *9 (E.D. La. Aug. 1, 2006); *Newcomb ex rel. Newcomb v. Okolona Mun. Separate School Dist.*, No. 97-264, 1999 WL 33537139, at *3 (N.D. Miss. Jan 22. 1999); *Harris v. Tate County School Dist.*, 882 F. Supp. 90, 91 (N.D. Miss. 1995).

[100] 28 U.S.C. § 1367(c)(1); *Petroplex International v. St. James Parish*, 158 F. Supp. 3d 537, 544 (E.D. La. 2016).

**IV.     CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED**.  Plaintiff's Claim under 28 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**.  Plaintiff's remaining state-law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, January 15, 2021.


**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**